IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD CODY & CARRIE WILLIAMS  :
As Parents and Natural Guardians of  :          No. 23-cv-0726-JMY
Minor, JC,                            :
          Plaintiffs,        :
                       :
     vs.                         :
                       :
PENNRIDGE SCHOOL DISTRICT, et al.,  :
          Defendants.         :

**MEMORANDUM**

**Younge, J.**                                                    October 25, 2023

Currently before the Court is a Motion to Dismiss for Failure to State a Claim filed by Pennridge School District (hereinafter "Pennridge MTD", ECF No. 11), a Motion to Dismiss for Failure to State a Claim filed by Douglas Matz (hereinafter "Matz MTD", ECF No. 15), and a Motion to Dismiss for Failure to State a Claim filed by Bucks County,[1] Nicole Bello, Kimberly Hamada, and Deborah Kessler (hereinafter "Bucks MTD", ECF No. 16).

The Court finds these Motions appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, the Motions to Dismiss filed by the Defendants will be granted to the extent that they seek dismissal of Plaintiff federal constitutional claims.  The Court will decline to exercise federal subject matter jurisdiction over the Plaintiff's state law claims because it has decided to dismiss federal civil rights claims.

I.      **PROCEDURAL AND FACTUAL BACKGROUND**:

Plaintiffs, Edward Cody and Carrie Williams, filed the instant matter in the Eastern District of Pennsylvania on behalf of their child, Plaintiff JC and against the captioned municipal

---

[1]  Defendant Bucks County is also identified in the Complaint as Bucks County Intermediate Unit.

agencies and individual employee Defendants.  (Complaint, ECF No. 1.)  The case arises out of an unfortunate incident where Plaintiff JC was mistakenly left on a bus driven by Defendant, Douglas Matz ("Defendant Matz") after his January 27, 2022 morning run to a non-compulsory preschool early intervention support program operated by Defendant, Bucks County.  (*Id.*) Moving Defendant, Pennridge School District is located in Bucks County and encompasses eight of the county's fifty-four municipal boroughs and townships.

At the time of the incident, Plaintiff JC was three years old and was enrolled to attend the program from 12:30 pm to 3:00 pm on Mondays and Thursdays due to developmental delays that left her essentially non-verbal.  (Id. ¶ 7.)  Co-Defendant, Nicole Bello ("Defendant Bello"), was employed as Plaintiff JC's "Head Start Teacher by Bucks County and was responsible for Plaintiff JC's well-being." (Id. ¶¶ 22-24.)  Defendant Matz was employed as a bus driver of Defendant, Pennridge School District at the time of the incident.  (Id. ¶¶ 12-13, 36.)

As noted in the Complaint, the surveillance footage[2] depicts Defendant Matz picking up Plaintiff JC near her residence where she was brought onto the bus by her mother who strapped her into a five-point harness child car seat. (Id. ¶¶ 36-43.)  The video depicts two children already strapped in on the bus when Plaintiff JC enters, and Defendant Matz picked up one additional child prior to proceeding to the Bucks County facility located at 529 Constitution Avenue, Perkasie, PA 18944.  (Id. ¶¶ 34, 44-45.)  When the bus arrived at the Buck County facility at approximately 12:29 pm, staff members of Defendant Bucks County entered the bus and began removing the harnesses to retrieve the other children enrolled in the early intervention program.  (Id. ¶¶ 46-53.)  According to the Complaint, two of Defendant Bucks County's staff members greeted and acknowledged Plaintiff JC while retrieving other students with the second

---

[2]  The Complaint includes quotation to audio sound track and clips from video surveillance footage taken from inside the bus at the time of the incident.  (*See generally* ECF #1.)

staff member saying, "Hi, sweetie. They'll be out to getcha [sp]."  (Id. ¶¶ 48-54.)  The Complaint identifies the two staff members helping students off the bus as Bucks County teachers or teacher's aids Dedra Kessler ("Defendant Kessler") and Kimberly Hamada ("Defendant Hamada").  (Id. ¶¶ 25, 27-28, 30, 48, 96, 98.)

Approximately three minutes after Defendant Bucks County's staff first began removing students from the bus, Defendant Matz is captured on video looking back towards passenger seating, failing to notice that Plaintiff JC was not removed, and making a statement referencing how he did not even see Bucks County staff remove one of the passengers before closing the door and proceeding to the transportation depot with Plaintiff JC still strapped into her seat. (Id. ¶¶ 57-62.)  Upon arriving at the transportation depot, Matz is depicted looking back once again, this time while backing into a parking spot at the depot, without observing the presence of Plaintiff JC. (Id. ¶ 62.)  Defendant Matz then exits the bus without noticing Plaintiff JC's presence.  (Id. ¶ 64.)

According to the Complaint, Buck County staff did not attempt to call or contact Plaintiff JC's parents to inquire as to why she was absent from school that day.  (*See generally* Complaint.)  Plaintiff JC's mother reached out to the Bucks County staff to report that the afternoon bus that was supposed to bring Plaintiff JC home never arrived.  Pennridge School District was then contacted and discovered Plaintiff JC after searching the bus operated by Defendant Matz that morning and transported her home.  (Id. ¶¶ ECF No. 75-82.)  Plaintiff JC had been alone on the bus in the parking lot for an estimated four hours.  (Id. ¶¶ 64, 70, 82.)  The high temperature on January 27, 2022 reached around 28 degrees in that location.  (Id. ¶¶ 67 & 77.)

As a result of the incident, Defendant Matz was criminally charged with reckless endangerment of another person, and he pled guilty to same.  (Id. ¶ 85.)  The Complaint alleges that Bucks County had a policy regarding contacting a student's parents if a student did not arrive to school.  (Id. ¶ 89.)  The Complaint also alleges that Defendant Bello did not follow that policy for which she was responsible as Plaintiff JC's teacher.  (Id. ¶ 91.)  Pennridge School District maintained policies and procedures for post drop off inspection of busses to ensure that students like Plaintiff JC were not forgotten and left unattended on busses.[3]  These policies and procedures, in relevant part, are set forth as follows:

> [I]nstead of waiting until you arrive back at the transportation yard, a post-trip should be done in the morning after each drop off at the school and in the afternoon after the last student is off the bus. This check will assist in the driver being immediately aware of sleeping children." [Section 16 (Pre and Post-Trip Inspections).]

> **ALL** drivers are to check their buses between each school run in the AM and PM. This check should be accomplished quickly and efficiently after the AM drop offs at the schools.  If there is a convenient place to do this check at each school, please check the bus for sleeping children, backpacks, lunches, etc. before you leave the area at the school.  If you feel you must check the bus elsewhere, please do so close to the school in case something or someone needs to go back to the school…. This check should also be done every AM and PM after completion of each school run. Please check at your next school for clearance of the bus for your past run. After you are done your last run in the PM, find a safe and close place to quickly check the bus.  If a child is found sleeping on the bus, please notify dispatch immediately so the school and parent can be notified.  [Section 17 (Checking Bus after each Bus Run).]

https://www.pennridge.org/Page/1851 (last visited on September 21, 2023).

---

[3]  The Court takes judicial notice of the of the transportation policies and procedures posted on Pennridge School District's website.  Courts within the Third Circuit "may consider documents that are attached to or submitted with the complaint and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.'"  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d. Cir. 2006) (citations and internal alternations omitted); *see also Julabo USA, Inc. v. Juchheim*, No. 5:19-CV-01412-JDW, 2021 WL 2351958, at *2 (E.D. Pa. Jun. 9, 2021) (quoting Tellabs, 551 U.S. at 322-23).

Plaintiffs have brought constitutional claims under 42 U.S.C. § 1983 and 1985 for false imprisonment alleging that Plaintiff JC was unlawfully detained without due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. The Complaint sets forth various claims against the Defendants as follows: [1] Count I – False Imprisonment (Pennridge School District and Defendant Matz); [2] Count II – False Imprisonment (Bucks County and Defendants Bello, Hamada & Kessler); [3] Count III – Section 1983 failure to train/supervise (Pennridge School District); [4] Count IV – Section 1983 failure to train/supervise (Bucks County); [5] Count V – Negligence (Pennridge School District & Defendant Matz); [6] Count VI – Negligence (Bucks County and Defendants Bucks IU Defendants); [7] Count VII – Negligent Infliction of Emotional Distress (all Defendants); [8] Count VIII – Intentional Infliction of Emotional Distress (all Defendants); and [9] Count IX – Section 1985 claims (all Defendants).

## II.   LEGAL STANDARD:

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Thus, this Court must examine Plaintiff's claims to determine whether it can infer that

Defendants are liable for the alleged misconduct.

## III.    DISCUSSION:

### A.    The Compliant Fails to Set Forth a Plausible Claim Against Defendants for a Violation of Plaintiffs' Constitutional Rights Under 42 U.S.C. § 1985:

The Complaint fails to set forth facts to establish a conspiracy to interfere with Plaintiff

JC's civil rights under 42 U.S.C. § 1985.  To state a claim under 42 U.S.C. § 1985(3), a plaintiff

must set forth facts to establish that defendants conspired to deprive plaintiff of his/her

constitutional rights, and that defendants were motivated by racial or class-based animus in

forming their conspiracy to deprive plaintiff of his/her constitutional rights, equal protection of

the laws, or of equal privileges and immunities under the laws.  "Section 1985(3) provides a

cause of action if: (1) two or more persons conspire to deprive any person of the equal protection

of the law; (2) one or more of the conspirators performs or causes to be performed any overt act

in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or

property or deprives the plaintiff of any right or privilege of a citizen of the United States."

*Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v.*

*Breckenridge*, 403 U.S. 88, 102–103 (1971)); *Bougher v. University of Pittsburgh*, 882 F.2d 74,

79 (3d Cir.1989).

In support of their Section 1985 claims, Plaintiffs generally assert that:

Defendants, Pennridge Bus, Mr. Matz, Bucks County, Ms. Bello, Ms. Hamada, and Ms. Kessler worked in connection with one another and/or conspired to falsely imprison, endanger, starve, torment, and/or freeze, Minor JC while in custody without due process of law and in violation of Minor JC's constitutional rights as protected by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and in violation of 42 U.S.C. § 1985.

(Complaint ¶ 184, ECF No. 1.)

Plaintiffs fail to sufficiently aver specific facts to establish a conspiracy claim under Section 1985(3).  Plaintiffs' threadbare allegation of the existence of a conspiracy falls woefully short of the necessary factual specificity to establish a claim under Section 1985(3).  Plaintiffs make no attempt to specify the agreement between the Defendants, the Defendants' intent or the purpose of the conspiracy.  Courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972).

Plaintiffs have not alleged any facts that demonstrate an agreement or a meeting of the minds between Defendants and the employees, or any other persons, to violate Plaintiff JC's rights.  Without such allegations, Plaintiffs cannot maintain a claim under Section 1985. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (affirming dismissal of Section 1985 claim where plaintiff produced evidence demonstrating a conspiracy).  A necessary element of a Section 1985 claim is the existence of a conspiracy between two or more persons. *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

Plaintiffs have failed to allege any facts suggesting that Defendants were motivated by racial or class-based animus.  The requirement of racial or class-based animus is a necessary element of a Section 1985 claim. *Griffin*, 403 U.S. 102; *Farber v. City of Paterson*, 440 F.3d 131, 134-135 (3d Cir. 2006) (affirming dismissal of Section 1985 claim where the Plaintiff did not allege any racial or class-based animus.).  To state a claim under 42 U.S.C. § 1985, a plaintiff must allege that the defendant conspired to deprive them of the equal protection of the laws, or of equal privileges and immunities under the laws, motivated by a racial or class-based animus. *Id.* Without such allegations, Plaintiffs cannot maintain a claim under Section 1985. *Id.*

When the Court grants a motion to dismiss, it must decide whether to grant leave to amend. Where plaintiff would be incapable of curing the defective pleading by filing an amended complaint, leave to amend may properly be denied. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

Plaintiffs' claim that Defendants conspired to interfere with her civil rights will be dismissed without leave to amend because amendment of this claim would be futile. The fact pattern surrounding this incident – as described by Plaintiffs in the Complaint and in conjunction with the videotaped clips included in the Complaint – simply fails to show a conspiracy within the meaning of 42 U.S.C. § 1985. The facts alleged in Plaintiff's Complaint suggests Defendants, individually as well as collectively, were embroiled in a series of negligent acts or omissions rather than intentional conduct aimed at denying Plaintiff JC's constitutional rights. The Complaint describes an incident in which Plaintiff JC was not taken off the bus upon arrival at her destination because the bus driver failed to realize Plaintiff JC was still on the bus and left before she could be removed. Therefore, leave to amend will not be granted.

**B.     The Complaint Fails to Allege Facts to Establish that Any Named Defendant Violated Plaintiffs' Fourth Amendment Right to Be Free from Unreasonable Search and Seizure as Made Applicable to the States by 42 U.S.C. § 1983:**

Plaintiffs' claim based on a theory of unreasonable search and seizure as defined by the Fourth Amendment brought against Defendants under 42 U.S.C. § 1983 will be dismissed. The

Complaint completely fails to aver facts to establish that Plaintiff JC was subjected to an unreasonable search. The Complaint also fails to establish that Defendants acted with the requisite purposefulness, willfulness or intent to establish an unreasonable seizure as defined by the Fourth Amendment. The fact pattern set forth in the Complaint fails to establish an intentional confinement or that Defendants intentionally exerted physical control over Plaintiff JC. The Complaint simply sets forth facts that establish a potential claim for ordinary or gross negligence based on Defendants' failure: to remove Plaintiff JC from the bus upon arrival at her destination; to realize that she was absent from class and/or take appropriate action upon learning that Plaintiff JC was absent from class; and/or to realize that Plaintiff JC remained on the bus unattended after parking and exiting.

In the context of a Fourth Amendment claim brought under Section 1983, any liability must turn on an application of the reasonableness standard governing searches and seizures. *County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998). To establish a Fourth Amendment unlawful search and seizure claim against a school district official/agent, a plaintiff must allege the following two elements: (1) a search and seizure occurred and (2) the search and seizure is or was unreasonable under the circumstances. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.* 422 F. 3d 141, 147-48 (3d Cir. 2005). A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 171 (3d Cir. 2001) (citing, *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The Fourth Amendment governs "all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest.'" *U.S. v. Mendenhall*, 446 U.S. 544, 551 (1980) (quoting *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). "A seizure occurs for

Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave." *Michigan v. Chestnut*, 486 U.S. 567, 573 (1988).  The Fourth Amendment's prohibition of unreasonable seizures applies in the school context.  *New Jersey v. T.L.O.*, 469 U.S. 325, 336-337 (1985).  However, for government conduct to amount to a seizure within the context of the Fourth Amendment under Section 1983, a plaintiff must show that the defendant engaged in a willful or purposeful act that resulted in an unreasonable seizure.  *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).

> Violation of the Fourth Amendment requires an intentional acquisition of physical control.  A seizure occurs even when an unintended person or thing is the object of the detention or taking ... but the detention or taking itself must be willful.... [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ... but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Brower*, 489 U.S. at 596-97.  The Third Circuit has interpreted *Brower* as "focusing on the objective intent of officials to use force to effectuate a seizure and the subsequent seizure flowing from the use of that force."  *In re City of Philadelphia Litigation,* 158 F.3d 711, 722 (3d Cir.1998).

On facts that were dramatically similar to the facts asserted in this case, the district court in *K.M. v. Chichester Sch. Dist.*, 152 F. Supp. 3d 412, 416 (E.D. Pa. 2015), dismissed a Fourth Amendment claim.  In *K.M. v. Chichester*, the Court wrote:

> [The] [p]laintiffs allege[d] that their child . . . who suffers from autism, sleep apnea, and other health conditions, was left on his school bus asleep at the end of the day.  When he awakened, alone, he had prolonged difficulty exiting the bus.  According to the complaint, when he finally succeeded, he wandered alone until he was found by a stranger, who then left him in the custody of the school's football coach . . . Ten students diagnosed with autism were transported on the bus, which was staffed with both a driver and a bus monitor.

The district court, in *K.M. v. Chichester*, found that there was nothing in the fact pattern to suggest that the bus driver meant to confine the student and dismissed the Fourth Amendment claim noting that there was no showing of willfulness as required by *Brower*.

The Court finds no Fourth Amendment claim based on its interpretation of the fact pattern surrounding the incident in the case *sub judice*. The factual allegations set forth in the Complaint include clips of video footage taken from inside the bus at the time of the incident. The Court reads the Complaint in conjunction with the video footage which fails to illustrate that a Fourth Amendment unreasonable search and/or seizure occurred. Rather, the alleged incident – as described by Plaintiffs – involves an omission in which Plaintiff JC was not taken off the bus upon arrival at her destination because the bus driver left before the student could be removed by Defendants.

No facts were pled which would establish that Plaintiff JC was searched by Defendants. The Complaint establish that Plaintiff JC was picked up at her home by Defendant Matz who was driving a Pennridge school bus. (Complaint ¶ 36.) Plaintiff JC's mother, Ms. Williams, helped her onto the bus and removed her winter coat so that she could be harness to a seat. (*Id.* ¶ 41.) Plaintiffs aver, "Due to [Plaintiff JC's] age and disability, Minor JC's mother, Ms. Williams, strapped her daughter into the five-point harness, in the second row, passenger side, of the bus." (*Id.* ¶ 40.) These factual allegations simply do not establish that a search occurred.

The Complaint also fails to establish that Plaintiff JC was seized within the meaning the Fourth Amendment. A logical interpretation of the fact pattern described by Plaintiffs suggests a negligent, careless or accidental omission in the nature of an erroneous oversight on the part of Defendants Bello, Hamada, Kesler, and/or Matz. There is nothing to suggest an "intentional acquisition of physical control" or an intentional confinement. A reasonable interpretation of the

facts as plead simply do not establish a willful, purposeful or intentional detention of Plaintiff JC as required to establish Fourth Amendment seizure claim.

When the Court grants a motion to dismiss, it must decide whether to grant leave to amend.  Where plaintiff would be incapable of curing the defective pleading by filing an amended complaint, leave to amend may properly be denied.  *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

Amendment would be futile in this lawsuit for all of the reasons outlined herein above. Therefore, dismissal of Plaintiffs' Fourth Amendment claims without leave to amend is appropriate.

**C.**     **The Complaint Fails to Allege Facts to Establish that Any Named Defendant Violated Plaintiffs' Fifth Amendment Rights Because the Fact Pattern Set Forth in the Complaint Suggests that Defendants Were State Actors:**

Claims for violation of Plaintiffs' Fifth Amendment Constitutional rights will be dismissed without leave to file an amended complaint to reassert Fifth Amendment claims.  The Fifth Amendment to the United States Constitution provides that "[n]o person shall be... deprived of life, liberty, or property, without due process of law..."  U.S. Const. amend. V.  This constitutional guarantee is directed solely at actions of the federal government.  *Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).  The due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state

officials.  *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009); *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013).  Defendants are employed by the Commonwealth of Pennsylvania, and, consequently, they are state officials or actors and the Fifth Amendment's Due Process Clause is inapplicable to them.  *Spell v. Allegheny County Admin.*, No. 14-1403, 2015 U.S. Dist. LEXIS 36903, at *14 (W.D. Pa. Mar. 24, 2015).

The facts pled in the Complaint fail to establish that Defendants were federal governmental entities or agents of the federal government.  Quite to the contrary, the facts as set forth in the Complaint establish that Defendants were (and are) state or local municipal entities and/or agents.  Plaintiff asserts a claim against, Pennridge School District.[4]  (Complaint ¶ 8.) Pennridge School District is a local school district in the state of Pennsylvania that encompasses eight municipalities in Bucks County which includes Defendant Bucks County Intermediate Unit.  Bucks County Intermediate Unit is a state actor under Pennsylvania law.  Intermediate Units are established by the Pennsylvania Public School Code, 24 P.S. § 9-951, *et seq*.  The statute defines an Intermediate Unit as a "regional educational service agency" that provides various services to local school districts in Pennsylvania.  24 P.S. § 9-951.  Bucks County Intermediate Unit operates under the authority and supervision of the Pennsylvania Department of Education, a state agency.  24 P.S. § 9-952.

Defendants Bello, Hamada, and Kessler committed the alleged wrongful acts while working in their capacity as agents or employees of Pennridge and/or Bucks County at the time of the incident.  Therefore, they should be considered state actors.  *West v. Atkins*, 487 U.S. 42, 49-50 (1988) (holding that a person acts "under color of state law" when they act with authority derived from a state); *Nguyen v. US Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983) (the

---

[4]  Plaintiffs bring suit against Pennridge School District doing business as or otherwise known as Pennridge School District Transportation Department.

Fifth Amendment restricts the actions of federal officials.).  Similarly, Defendant Matz's involvement in the incident arose from his alleged role as a bus driver for Pennridge School District.  Therefore, the Fifth Amendment offers no recourse for constitutional or tort violations allegedly committed in his role as a state actor.

Under these circumstances, leave to amend will not be granted in relationship to Plaintiffs' Fifth Amendment claims because amendment would be futile.  (See hereinabove for a discussion of relevant case law and analysis on the standard applied by the Court when deciding whether to grant leave to file an amended complaint.)

**D.      The Complaint Fails to Allege Facts to Establish a Plausible Claim against Defendants for Violation of Plaintiffs' Fourteenth Amendment Rights under Section 1983:**

In the Complaint, Plaintiffs attempt to assert a claim for violation of Plaintiff JC's Fourteenth Amendment rights presumably under either the Due Process Clause or Equal Protection Clause.  In response to Defendants' motions to dismiss, Plaintiffs further define their Fourteenth Amendment claim by citing to the "state-created danger" doctrine.  (Opposition to Motions to Dismiss, ECF No. 17 page 19-24, ECF No. 18 page 22-26, ECF No. 19 page 25-30.) They argue that students like Plaintiff JC have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.  (*Id.*) Plaintiffs argue that they can establish a substantive due process violation under the Fourteenth Amendment based on a "state-created danger" theory of liability.

To state a claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment, the Plaintiff must allege facts showing that the Defendants, as government actors, deprived the Plaintiff of protected interest without due process of law.  *United States Constitution, Amendment*

XIV § 1.  Third Circuit precedent establishes the following essential elements of a meritorious "state-created danger" claim:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.,* 443 F.3d 276, 281 (3d Cir. 2006).

The Third Circuit court in *Bright*, further explained that the fourth element of the test for evaluating the state-created danger theory of liability requires a plaintiff to aver facts to show that a state actor affirmatively committed an act.  The Court wrote:

> It is important to stress, for present purposes, that under the fourth element of a state-created danger claim, "[l]iability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School,* 972 F.2d 1364, 1374 (3d Cir.1992); *Brown v. Grabowski,* 922 F.2d 1097, 1100–01 (3d Cir.1990) (finding that *DeShaney* holds "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship ... support a civil rights claim").  It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.  While we have acknowledged that the line between action and inaction may not always be clear . . . we have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.

*Bright*, 443 F.3d at 282.

In *Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006), the Third Circuit discussed the second element in the four-part test for establishing liability based on the state-created danger doctrine.  The Court in *Sanford* reached the conclusion that the evaluation of whether a state actor's conduct was shocking to the conscience was a fact specific analysis that varied depending on

circumstances and context in which the conduct occurred.  *Id.*  The Third Circuit Appellate Court

has explained:

> The level of culpability required to shock the conscience increases as the time state
> actors have to deliberate decreases.  In a "hyperpressurized environment," an intent
> to cause harm is usually required.  On the other hand, in cases where deliberation
> is possible and officials have the time to make "unhurried judgments," deliberate
> indifference is sufficient.

*Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006); *see also Rivas v. City of Passaic*, 365 F.3d

181, 195 (3d Cir. 2004) ("conduct that shocks the conscience" under one set of circumstances

may not have the same effect under a different set of circumstances").

Applying the legal standard and precedent outlined in the above discussion to the facts of

this case, it becomes apparent that Plaintiffs fail to establish a claim based on a state-created

danger theory of liability for the conduct of Defendants Bello, Hamada, and Kessler.  Plaintiffs'

legal theory fails because the Defendant teachers and/or teacher aids never affirmatively exerted

control over or took custody of Plaintiff JC.  Defendants Hamada and Kessler were teachers

and/or teacher aids who were allegedly in the parking lot of the school helping students off of the

school bus at the time of the incident.  Although it is alleged that Defendants Hamada and

Kessler entered the school bus to help remove students, there is nothing to show that they

affirmatively took possession of Plaintiff JC who remained on the school bus.  It is alleged that

Defendant Bello was a teacher who did not realize that Plaintiff JC was absent from class and/or

failed to contact Plaintiff JC's parents when she realized that the child was absent from class.

These alleged omissions hardly establish that Defendant Bello affirmatively used her authority in

a way to create a danger or that rendered Plaintiff JC more vulnerable to danger than had

Defendant Bello not acted at all.  The Complaint simply fails to set forth a fact pattern that

suggests personal involvement in the nature of an affirmative act on the part of Defendants Bello, Hamada, or Kessler.

Plaintiffs state-created danger theory of liability for the conduct of Defendants Bello, Hamada and Kessler is equally faulty because there is nothing to show that Defendants' conduct was shocking to the conscience.  Everything suggests a negligent oversight or omission that is not shocking to the conscience in terms of being willful, intentional or purposeful.  A fair evaluation and assessment of the video footage included in the Complaint illustrates an omission on the part of the Defendant teachers and teacher aids.  The Court credits this video footage in support of its decision to dismiss claims related to Defendants Bello, Hamade and Kessler. Plaintiffs' bald allegation that the behavior of Defendant teachers and teacher aids is shocking to the conscience is simply insufficient to establish a constitutional claim.

Plaintiffs' constitutional claim brought on a state-created danger theory of liability for the conduct of Defendant Matz fails because – in the opinion of this court – Plaintiff is unable to establish that his behavior shocks the conscience.  Again, the Court relies on the fact pattern set forth in the Compliant in conjunction with the video footage included in the Complaint when evaluating the conduct of Defendant Matz.  All facts plead suggest a negligent omission on his part rather than an affirmative act or exercise of state authority.  The omission by Defendant Matz might support a potential claim for ordinary or gross negligence, but in the opinion of this Court, it does not support a claim for constitutional violation.  The isolated oversight by Defendant Matz does not reach the high threshold of conscience-shocking behavior.  The fact that Defendant Matz pled guilty in state court and was convicted of reckless endangerment in relationship to this incident does nothing to persuade the Court to allow this action to proceed on the theory that he committed a federal constitutional violation in the incident.  As will be

discussed more fully herein below, Defendant will be afforded the shield of qualified immunity for claims asserted against him in his individual capacity.

Defendants Pennridge School District and Bucks County are municipal entities who cannot be held liable on a theory of vicarious liability or *respondeat superior* for the acts of their employees or agents – Defendants Bello, Hamada, Kessler and Matz. *Magwood v. French*, No. 5-cv-945, 478 F. Supp. 2d 821, 832 (W.D. Pa. 2007) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (A municipal entity cannot be liable merely because its agents are tortfeasors). A municipal entity may be liable if a plaintiff "demonstrate[s] that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). Therefore, "It has been clear since Monell[] that governmental entities cannot be held liable for constitutional violations caused by their employees under the theory of *respondeat superior*." *K.M.*, 152 F. Supp. 3d at 419 (discussion *Monell*, 436 U.S. 658).

The state-created danger theory of liability asserted by the Plaintiffs will be dismissed form this action without leave to file an amended complaint to reassert claims based on a state-created danger theory of liability. Leave to amend will not be granted because amendment would be futile under the circumstances.

**E.     Plaintiffs' *Monell* Claim Against Municipal Entities Pennridge School District and Bucks County (Bucks County Intermediate Unit):**

The lawsuit that Plaintiffs filed against Defendants Pennridge School District and Bucks County fails for multiple reasons that will be explained in more detail below. The federal claims that Plaintiffs assert against Pennridge School District and Buck County are known as a *Monell* claims because generally speaking a municipal entity like Pennrdige School District or Bucks County cannot be liable merely because its agents are tortfeasors. *Magwood,* 478 F. Supp. 2d at

832 (citing *Monell*, 436 U.S. at 691. A governmental entity can, however, be found liable under Section 1983 "where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95).

The first and foremost reason that Plaintiffs' *Monell* claim fails is because Plaintiffs have failed to establish a Constitutional violation committed by an individual state actor. As previously discussed herein, Plaintiffs' Fourth Amendment, Fifth Amendment and Fourteenth Amendment claims fail along with all other Constitutional violations averred in the Complaint. Defendants, Pennridge School District and Bucks County, cannot be "liable under *Monell* unless one of [its] employees is primarily liable under Section 1983 itself." *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989). Plaintiffs have simply failed to demonstrate a viable federal civil rights claim against the individual Defendants. As a matter of law, it is appropriate to dismiss the *Monell* claim because for a municipality to be found liable under Section 1983, a plaintiff "must show that the [municipality] was responsible for any constitutional violations," and thus there "must be a violation of [the plaintiff's] constitutional rights." *Statzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008). Municipalities may be held liable under Section 1983 only if a plaintiff can show a predicate constitutional violation of a plaintiff's rights. *Young v. City of Chester*, 764 F. App'x 262, 265 (March 29, 2019) (citing *Statzell*, 533 F.3d at 204).

Plaintiffs' *Monell* claim also fails because the allegations in the Complaint are insufficient to plausibly set forth a *Monell* claim. Plaintiffs have failed to plead a viable *Monell* claim for multiple reasons, including for example, the fact that they have failed to set forth sufficient detailed facts to establish that Pennridge School District and/or Bucks County were deliberately indifferent to a known risk. Plaintiffs have alleged that the municipal entities failed

to train and supervise their employees or agents, and that they failed to implement appropriate policies and procedures to ensure that students were not left on buses.  (Counts III-IV.)

To succeed on a claim for failure to discipline or supervise, a plaintiff must establish "a municipality's deliberate indifference by showing that (1) the municipality knew its employees and/or agents required supervision or discipline; (2) there was a history of employee supervision or discipline being mishandled; and (3) in the absence of supervision or discipline, constitutional violations were likely to result."  *Forrest v. Parry*, 930 F.3d 106, 108 (3d Cir. 2019).  A claim for failure to train requires a similar showing of deliberate indifference.  *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 343-344 (E.D. Pa. 2006).  The Third Circuit Appellate Court has written, "[C]ourts which have recognized the state-created danger theory have employed a deliberate indifference standard."  *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996) (citing *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 202 (5th Cir. 1994) (noting that the deployment of haphazard or negligent methods does not rise to deliberate indifference.).

A municipal entity can be held liable for a constitutional violation when it is the result of systemic governmental failure to train its employees and said systemic failure "amounts to [a] deliberate indifference to the rights of persons with whom the [public employees] come into contact."  *Monell*, 489 U.S. at 388 (1978).  A municipal entity may be liable if a plaintiff "demonstrate[s] that the violation of rights was caused by the municipality's policy or custom."  *Thomas*, 749 F.3d at 222.  If a plaintiff alleges a failure to train or supervise, they must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact."  *Id.* (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).  This requires the identification of a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice

20

that a new program is necessary." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).   Alternatively, plaintiff would have to show that failure to provide the identified training would "likely ... result in the violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

"[M]unicipal liability attaches under §1983 where – and only where – a deliberate choice to follow a course of action is made from among various alternatives" by municipal policy makers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).  Plaintiff can show deliberate indifference by establishing (1) a pattern of conduct similar to the conduct at issue; and (2) failures to take constitutionally sufficient action as to this conduct.  *Connick*, 563 U.S. at 62; *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014).

Plaintiffs attempt to establish deliberate indifference based on their allegation that Pennridge School District failed to maintain established policies and procedures for safe transport of students to and from school.  However, Plaintiffs argument based on the failure to establish policies and procedures does not holdup to judicial scrutiny.  A review of the website maintained by Pennridge School District in conjunction with the representations made in its motions to dismiss, illustrates that Pennridge School District had established policies and procedures for the safe transport of students to and from school.  (Pennridge's Motion to Dismiss page 9, footnote 3 (citing https://www.pennridge.org/Page/1851).  The referenced policies and procedures were and are directly relevant to preventing students from being left unattended on parked buses.  Pennridge maintained policies and procedures designed to prevent incidents like

21

the situation in the case *sub judice* by requiring drivers to conduct pre and post run checks and inspections for students and their belongings.  Pennridge School District's policies and procedures governing transportation read as follows:

> [I]nstead of waiting until you arrive back at the transportation yard, a post-trip should be done in the morning after each drop off at the school and in the afternoon after the last student is off the bus. This check will assist in the driver being immediately aware of sleeping children." Section 16 [Pre and Post-Trip Inspections.]

> ALL drivers are to check their buses between each school run in the AM and PM. This check should be accomplished quickly and efficiently after the AM drop offs at the schools.  If there is a convenient place to do this check at each school, please check the bus for sleeping children, backpacks, lunches, etc. before you leave the area at the school.  If you feel you must check the bus elsewhere, please do so close to the school in case something or someone needs to go back to the school . . . This check should also be done every AM and PM after completion of each school run. Please check at your next school for clearance of the bus for your past run.  After you are done your last run in the PM, find a safe and close place to quickly check the bus.  If a child is found sleeping on the bus, please notify dispatch immediately so the school and parent can be notified."  [Section 17 (Checking Bus after each Bus Run.]

https://www.pennridge.org/Page/1851 (last visited on September 21, 2023).

In their Complaint, Plaintiffs plead facts to establish that Pennridge school bus driver – Defendant Metz – failed to appropriately adhere to policies and procedures.  However, Plaintiffs fail to provide examples of similar instances where children were previously left unattended on parked buses.  Plaintiffs fail to establish deliberate indifference by illustrating a pattern of previously occurring similar instances of misconduct.

Plaintiffs' *Monell* claim based on a theory of failure to train and supervise against Bucks County is set forth in Court IV of their Complaint.  (Complaint (Count IV).)  Plaintiffs allege *intra ilia* that Bucks County had a policy and procedure that required staff to contact a student's parent if the student did not arrive at school.  (*Id.* ¶ 89.)  The Complaint also alleges that

Defendant Bello did not follow that policy for which she was responsible as Plaintiff JC's teacher.  (*Id.* ¶ 91.)

Plaintiffs cite the fact that Buck County teacher, Defendant Bello, failed to contact Plaintiff - Parents when Plaintiff JC did not arrive in school on the day of the incident.  More broadly, Plaintiffs attribute deliberate indifference to a lack of training and supervision based on Bucks County's failure to control the teachers/teacher aides from preforming the most basic actions including calling parents when a preschool child is missing and failing to remove that child from a bus.  However, once again, Plaintiffs fail to establish a pattern of previous incidents when children where left unattended on a bus after the drop off point at school in the morning. *Rida ex rel. I.C. v. Polk Cnty. Sch. Dist.*, No. 8:17-cv-787-T-33AAS, 2017 U.S. Dist. LEXIS 108591 (M.D. Fl. July 13, 2017) (granting a motion to dismiss with leave to amend when the complaint failed to establish a historic policy or custom of leaving children unattended on school buses as required to establish a constitutional *Monell* claim.).

**F.      The Doctrine of Qualified Immunity Protects the Individual Defendants in their Personal Capacity:**

The doctrine of qualified immunity shields Defendants Bello, Hamada, Kessler and Matz from liability in their individual capacities for the federal constitutional violations asserted by the Plaintiffs.  Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether qualified immunity protects officials in a particular case, courts must consider: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the right was clearly established at the time of the violation.  *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)

(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).)  To overcome qualified immunity, a plaintiff must not only successfully allege a violation of a constitutional right, but that the constitutional right must have been clearly established at the time the claim arose.  *Kelly*, 622 F.3d at 253.  A right is clearly established if, given the circumstances, a reasonable official would not have known his/her conduct was a federal constitutional violation.  *Id*.

Turning to the fact pattern of the case *sub judice*, Plaintiffs are completely incapable of satisfying the first element of the qualified immunity analysis.  As discussed at length in this Memorandum, it is the opinion of the Court that Plaintiffs fail to establish that any of the Defendants committed a federal constitutional civil rights violation.  Therefore, the doctrine of federal qualified immunity shields Defendants in their individual capacity from the claims asserted in the Complaint.  However, assuming arguendo there was a constitutional violation, Plaintiffs would equally be incapable of satisfying the second element of the test for evaluating qualified immunity.

When conducting qualified immunity analysis under the second element of the two-part test, the Court must focus on whether a right is established in the circumstances of the case.  "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."  *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  The exact factual situation presented need not have been the subject of prior authority, but earlier precedent must be sufficiently analogous that a prudent government official would recognize that similar principles must guide their conduct.  As the rule was described by the Supreme Court: "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-

existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987); see also *Ashcroft v. Al-Kidd*, 563 U.S. at 741; *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

In the case *sub judice*, the question is whether a reasonable school official – like

Defendants Bello, Hamada, Kessler or Matz – would recognize that an omission which resulted

in accidentally leaving a student unattended on a parked bus would violate the United States

Constitution.  The Court finds no clearly established violation of the United States Constitution

in this instance.  Accordingly, although Plaintiffs have alleged constitutional violations under 42

U.S.C. § 1983 and 1985 in violation of the Fourth, Fifth and Fourteenth Amendments, the Court

will decline to find that any purported right was so clearly established that a reasonable official

would know that it rose to the level of a deprivation of Plaintiff JC's civil rights.

The Court credits the audio recording and video footage included in the Complaint in

reaching its decision to apply the doctrine of qualified immunity to the fact pattern set forth in

the Complaint.  The fact that Defendant Matz pled guilty to reckless endangerment does nothing

to change the Court's evaluation of qualified immunity.  Plaintiffs argue that he should be

disqualified from the benefit of qualified immunity based on his conviction for recklessness.

(Opposition to Matz MTD page 20.)  However, the Court is unaware of any legal precedent that

would strip Defendant Matz from being shielded by qualified immunity.

**G.     The Court Will Decline to Exercise Jurisdiction over the Remaining State**
**Law Claims and Will Dismiss Those Claims Without Prejudice:**

The Court will decline to exercise supplemental jurisdiction over state law claims

asserted by Plaintiff.  A district court may decline to exercise supplemental jurisdiction if it has

dismissed all the claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  In non-

diversity cases where the court grants summary judgement or dismisses all federal claims before

trial, the general rule is that a district court should decline to exercise supplemental

jurisdiction over the state law claims absent "extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F. 2d 187, 195 (3d Cir. 1976); *Johnson v. Trans Union, LLC*, No. 12-5272, 2013 U.S. Dist. LEXIS 71538, *12 (E.D. Pa. May 21, 2013) (declining to exercise jurisdiction over state claims since federal claims were did not survive dismissal which eliminated original jurisdiction).

The Court will dismiss without prejudice the state law claims asserted by Plaintiffs because it has decided to dismiss all claims asserted by Plaintiffs based on federal law.  The Court has decided to grant Defendants' motions to dismiss in relationship to all claims asserted under the U.S. Constitution and federal statute or law.  However, the Complaint also asserts claims of ordinary and gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  (Complaint ¶¶ 160-182.)  These state law cause-of-action could presumably be asserted under Pennsylvania common law or statute.  The Complaint also references claims of false arrest and/or false imprisonment (Id. ¶¶ 53-57) which could presumably be asserted under Pennsylvania state common law or state statute.  It would be fair to construe allegations in the Complaint as advancing claims of vicarious liability on a theory of respondeat superior against the School District and other Governmental Defendants along with potential claims for corporate negligence on theories of failure to train and supervise, failure to implement appropriate policies and procedures, and a failure to ensure that policies and procedures were followed.

Finding that there is no federal question presented in this lawsuit, the Court will decline to exercise jurisdiction over Plaintiff's state law claims which will be dismissed without prejudice.

**IV.     CONCLUSION:**

For these reasons, Defendants' motions for summary judgment will be granted, and this

action will be dismissed.  An appropriate order shall follow.

BY THE COURT:

    /s/ John Milton Younge    
Judge John Milton Younge